UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

VERNA J. FLOYD

VERSUS

CHILLY'S L.L.C. OF ALABAMA

CIVIL ACTION

NO.: 15-00544-BAJ-RLB

RULING AND ORDER

Before the Court is Defendant Chilly's L.L.C. of Alabama's ("Chilly's") **Motion for Summary Judgment (Doc. 8)**. Defendant seeks a ruling that dismisses Plaintiff Verna J. Floyd's case against it. (Doc. 8-1 at p. 1). Plaintiff filed a response, arguing that issues of material fact remain. (Doc. 10). Defendant filed a reply brief. (Doc. 19). For reasons explained fully herein, the Motion is **GRANTED**.

I. BACKGROUND

This case is brought by Verna J. Floyd as the representative of the estate of her deceased son, Jody Floyd ("Floyd"). (Doc. 1 at p. 1). Floyd was hired by Defendant in May of 2012 as a Business Development Manager. (Doc. 8-2 at p. 2:3-9). Defendant is a licensed distributor of "Good Humor" ice cream and confectionaries through freezers placed in retail outlets. (Doc. 8-1 at pp. 1-2). Floyd was responsible for acquiring new customers in the Baton Rouge area. (Doc. 8-2 at p. 2:11-23).

Floyd was hired by Defendant in May of 2012. (*Id.* at 2:3-5). Floyd approached the general manager of Defendant, and at the time Floyd was driving his own truck. (*Id.* at 12:16-25). Floyd indicated that he, at the time, had 400 accounts on his own,

1

and that if Defendant hired him he would help Defendant acquire those accounts. (*Id.*). On July 25, 2012, Defendant terminated Floyd's employment. (*Id.* at 16:14-21). By the time of his termination, Floyd was only able to deliver on 40 accounts. (*Id.* at 13:4-8). Defendant also asserts that, besides the failure to deliver on the accounts, Floyd experienced other problems over the course of his employment, including spotty quality of work and absenteeism. (Doc. 8-5 at ¶6; Doc. 8-6 at ¶4). Defendant also indicated that Floyd placed freezers in unsuitable areas, went outside his assigned territory, lost track of company assets, and was not communicating with supervisors. (*See* Doc. 8-4 at ¶6; Doc. 8-5 at ¶6).

Also in May of 2012, Floyd experienced health problems. (Doc. 10-1 at p. 2:12-21). On June 28, 2012, Floyd was diagnosed with squamous cell carcinoma. (Doc. 10-2 at p. 3). On June 18, 2012, Floyd sent an email to Steve Seward, a supervisor for Defendant that explained he was ill. (Doc. 10-6 at pp. 1-2). Floyd further explained that the illness left him "exhausted," caused his tongue to become paralyzed, and caused his lymph nodes to swell. (*Id.*). On July 17, 2012, approximately three weeks after the formal diagnosis, Floyd sent another email to Seward, describing some of Floyd's treatment regimens and advising that Floyd was seeking admission to the M.D. Anderson Cancer Center in Houston. (*Id.* at 3). On July 23, 2012, Floyd sent a text message to Randy Oliveri, one of Defendant's supervisors, indicating that Floyd was undergoing radiation treatment. (Doc. 8-2 at p. 7:16-25; *Id.* at 8:1-21). This text message was forwarded to Seward by Oliveri. (*Id.*).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263. On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### III. DISCUSSION

"The ADA, 42 U.S.C. §§ 12102 *et seq.*, prohibits discrimination in employment against a qualified individual on the basis of his disability." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221–22 (5th Cir. 2011). Termination of an employee because of his disability is a prohibited act of discrimination. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 700–01 (5th Cir. 2014). The United States Court of Appeals for the Fifth Circuit applies "a 'motivating factor' test, which provides that 'discrimination need not be the sole reason for the adverse employment decision . . . [so long as it] actually play[s] a role in the employer's decision making process and ha[s] a determinative influence on the outcome.'" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (*citing LHC Grp.*, 773 F.3d at 694).

Under the test developed by the Fifth Circuit:

> [A] plaintiff trying to show a violation of the ADA using circumstantial evidence must satisfy the *McDonnell Douglas* burden-shifting framework. To make out his prima facie (*sic*) showing under that framework, [Plaintiff] must show that: (1) the plaintiff has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability. If he makes that showing, a presumption of discrimination

4

arises, and the employer must articulate a legitimate non-discriminatory reason for the adverse employment action. The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual.

*Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016)[1] (internal quotations and citations omitted).

### A. Plaintiff's *Prima Facie* Case

As to Plaintiff's *prima facie* case, Defendant has indicated that it "assume[s] for the purposes of this Motion that Plaintiff can satisfy the first two prongs of" the test described above. (Doc. 8-1 at p. 12). However, Defendant argues that Plaintiff cannot show that Floyd was terminated "on account of" his disability. (*Id.* at 13). First, Defendant argues that there is not enough evidence in the record to indicate that Defendant was aware of Floyd's disability. (*Id.* at 13). Next, Defendant argues that there is no evidence linking the cancer diagnosis to the termination. (*Id.*).

On Defendant's first argument, the Court finds there is sufficient evidence in the record for a jury to conclude that Defendant was aware of Floyd's disability.[2] As explained above, reasonable inferences are resolved in favor of the non-movant on summary judgment. *Coleman*, 113 F.3d at 533. In this case, Seward was told about the nature and extent of Floyd's illness. (Doc. 10-6 at pp. 1-2). Seward was also told

---

[1] A few opinions in the Fifth Circuit have recognized a fourth element to the framework, where an employee must demonstrate that he was treated differently than a similarly situated employee without a disability. *See McCollum v. Puckett Mach. Co.*, 628 F. App'x 225, 230 (5th Cir. 2015). Defendant here argues that the Court should apply this fourth element. The Fifth Circuit addressed this exact issue recently, and concluded that based on its own rule of orderliness, the correct formulation of the test is the three element test iterated above. *See E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014) (holding that under the rule of orderliness, Fifth Circuit precedent demands merely the three element test for application of the *McDonnell Douglas* framework in the ADA context).

[2] The heart of Defendant's argument on this point is that Seward could have been notified in greater detail of Floyd's condition, but in fact, Seward, in response to Floyd's first lengthy email describing his complications, replied by saying "Jody, I don't need this much of an explanation . . . Thanks, Steve." (Doc. 10-6 at p. 1).

5

that Floyd was seeking admission in MD Anderson Cancer Center, which Seward knew was a cancer treatment hospital. (*See* Doc. 8-2 at p. 5:2-6). Finally, Floyd communicated with his supervisors about his treatments, including that he was undergoing radiation treatments. (*Id.* at 7:16-25; *Id.* at 8:1-21). At the very least, based on the record, it is reasonable to conclude that Defendant was aware of Floyd's disability, and thus, the Court must reject this argument for the purposes of summary judgment.

As to Defendant's second argument, due to the close temporal proximity between when Defendant was made aware of Floyd's disability, and the termination, the Court is persuaded that Plaintiff can demonstrate a *prima facie* case. In the employment context, the Fifth Circuit has recognized that a close temporal proximity between the adverse employment action and the actions of the employee can demonstrate a causal nexus. *See LHC Grp., Inc.*, 773 F.3d at 701 (timeline between employee's notification to employer of disability and termination provided enough evidence to overcome summary judgment when the decision was made closely after notification that employee was disabled); *Sherrod v. Am. Airlines*, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998) (holding that a close temporal proximity between adverse employment action and the filing of an EEOC claim demonstrated a causal link between protected activity and the termination). In this case, Floyd was terminated less than a month after Floyd informed Defendant that he was seeking cancer treatment. Such a close temporal proximity convinces the Court that, for the purposes

of summary judgment, Plaintiff may meet her burden to show a *prima facie* case of discrimination.

### B. Defendant's Legitimate Reasons for Terminating Floyd's Employment

The burden now shifts to Defendant to demonstrate legitimate, non-discriminatory reasons for terminating Floyd's employment. *See Cannon*, 813 F.3d at 590. This is not a high bar, and to meet this standard, it is enough for an employer to demonstrate that the employee's "performance is unsatisfactory according to management's business judgment." *LHC Grp., Inc.*, 773 F.3d at 701. Defendant may also show a failure to satisfy other rules of the employer to demonstrate a legitimate reason for terminating Floyd. *See Delaval*, 824 F.3d at 480.

Plaintiff argues that there is no evidence in the record pointing to a legitimate reason for firing Floyd. (Doc. 10 at p. 9). However, the Court is persuaded that Defendant has advanced several legitimate reasons for terminating Floyd. First, Seward testified in his deposition that Floyd was unable to deliver on accounts that Floyd said he would be able to acquire when he was hired. (Doc. 8-2 at p. 12:13-25; *Id.* at p. 13:1-8). This alone would be enough justification, but the record also indicates that Floyd infringed on other salesperson's territories, that Floyd was difficult to communicate with, that he left freezers in strange places, and that his paperwork was often sloppy or not delivered to his supervisors. (*See* Doc. 8-4 at ¶6; Doc. 8-5 at ¶6; Doc. 8-6 at ¶4). Because there are legitimate reasons for the termination of Floyd's employment, the Court must move on to the final step, and determine whether an issue of material fact exists as to whether the reasons are pretextual.

## C. Pretext for Discrimination

As the final step, the Plaintiff must demonstrate that the legitimate reasons listed above are pretextual. *Delaval*, 824 F.3d at 479. "In response to a motion for summary judgment, an employee must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason for termination is pretextual." *Id.* at 480.

In the Fifth Circuit, "[p]retext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Id.* (internal quotation omitted). An employee may also point to the presence of inappropriate workplace comments or other forms of discrimination to argue that the firing was pretextual. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001). Finally, the Fifth Circuit has also recognized that a court *may* infer pretext when an employer provides inconsistent or conflicting reasons for firing the employee and the reasons contradict one another. *See, e.g.*, *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 594 (5th Cir. 2007) (inconsistent reasons did not demonstrate employer's pretext because the "two explanations were not, in fact, inconsistent but rather two separate, independent" reasons for the termination); *Read v. BT Alex Brown Inc.*, 72 F. App'x 112, 120 (5th Cir. 2003) (non-contradictory reasons for firing did not sufficiently demonstrate pretext).

Plaintiff fails to present evidence that controverts Defendant's reasons for firing Floyd, evidence of disparate treatment, or of any other form of workplace

8

discrimination. Instead, Plaintiff's sole argument is that the evidence demonstrates shifting and inconsistent reasons for firing Floyd. (Doc. 10 at p. 9-10). However, Plaintiff does not show that these "shifting reasons," to the extent they were such, contradict each other, and instead, only demonstrates that there were additional reasons to terminate Floyd's employment. Defendant's initial reasons for firing Floyd have remained consistent throughout the litigation. (*See* Doc. 10-6 at p. 5). Defendant has maintained from the beginning that Floyd had a subpar sales performance record. (*See Id.*). The summary judgment evidence supports this reasoning, while also citing to other examples of poor performance issues, including that he performed sloppy work and was unresponsive to his supervisors. (Doc. 8-2 at p. 12:13-25; *Id.* at 13:1-8; Doc. 8-4 at ¶6; Doc. 8-5 at ¶6; Doc. 8-6 at ¶4). From this consistent evidence, a reasonable juror could not infer pretext, as Plaintiff has failed to offer "substantial evidence" that the reasons were pretextual.

Considering Defendant's legitimate proffered reasons for terminating Floyd's employment, Defendant is entitled to summary judgment, and the case must be dismissed.

IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Defendant's **Motion for Summary Judgment (Doc. 8)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Americans with Disabilities Act claim against Defendant is **DISMISSED**.

Baton Rouge, Louisiana, this 21st day of April, 2017.

**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**